## UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DONALD V. PORRECA ) | |
| ) | |
| ) | |
| Plaintiff, ) | CIVIL ACTION NO.: |
| ) | |
| v. ) | |
| ) | |
| ALTERNATIVE ENERGY HOLDINGS, LLC; ) | |
| KEVIN T. CARNEY; ROBERT IREY; ) | |
| JONATHAN FREEZE; DODARO, ) | |
| MATTA & CAMBEST, P.C.; DMC BRADLEY; ) | |
| MICHAEL J. HAMMOND; and ) | |
| STEVEN M. TOPRANI. ) | |
| ) | |
| Defendants ) | |
| ) | |

## COMPLAINT

Plaintiff, Donald V. Porreca, by and through his undersigned attorneys, hereby files this Complaint against Alternative Energy Holdings, LLC, Kevin T. Carney, Robert Irey, Jonathan Freeze, DMC Bradley, Dodara, Matta & Cambest, P.C., Michael J. Hammond, and Steven M. Toprani, stating as follows:

## PARTIES

1.     Plaintiff Donald V. Porreca ("Porreca") is an adult individual who resides at 555 Wandering Lane, Beaver, WV 25813.

2.      Defendant Alternative Energy Holdings, LLC ("AEH") is a Florida limited liability company with addresses at 3030 N. Rocky Point Drive, Tampa, Florida 33607 and 7635 Fields Road, Chagrin Falls, Ohio 44023.

3.      Defendant Kevin T. Carney ("Carney") is an adult individual who, upon information and belief, resides at 7635 Fields Rd., Chagrin Falls, Ohio 44023. At all times material herein, Defendant Carney was the Manager and CEO of Defendant AEH and a Manager of The Maxximus Group, LLC.

4.      Defendant Robert Irey ("Irey") is an adult individual who, upon information and belief, resides at 4000 Mason Lane, Apartment 4409, Pittsburgh, PA 15205. At all times material herein, Defendant Irey was a Manager of Defendant AEH and a Manager of The Maxximus Group, LLC.

5.      Defendant Jonathan Freeze ("Freeze") is an adult individual whose last known address is 3000 Mason Lane, Apartment. 3401, Pittsburgh, PA 15205. At all times material herein, Defendant Freeze was a Manager of Defendant AEH. Defendant Freeze was a registered stockbroker from October 1995 to April 2017.  He was permanently barred from the securities industry by the Financial Industry Regulatory Authority ("FINRA") in August 2017.

6.      Defendant Dodara, Matta & Cambest, P.C. ("DMC") is a law firm located at Southpoint Town Center, 1900 Main Street, Suite 207, Canonsburg, PA 15317.

7.      Defendant DMC Bradley is a joint venture between Defendant DMC and the Bradley Law Firm and located at 1900 Main Street, Suite 207, Canonsburg, PA 15317, and upon information and belief was formed in January 2017.

8.      Defendant Michael J. Hammond ("Hammond") was at all times material herein a partner with Defendants DMC and DMC Bradley.

9.      Defendant Steven M. Toprani ("Toprani") was at all times material herein a partner with Defendants DMC and DMC Bradley.

## JURISDICTION AND VENUE

10.     The jurisdiction of this Court is based on 28 U.S.C. § 1332. The matter in controversy exceeds the sum of $75,000 and is between citizens of different states. Plaintiff is a resident of the state of West Virginia; Defendants Irey,  Freeze, DMC, DMC Bradley, Hammond, and Toprani are residents of the Commonwealth of Pennsylvania; and Defendants AEH and Carney are residents of Florida and Ohio, respectively.

11.     Venue is proper in this district under 28 U.S.C. § 1391(b)(2), because a substantial part of the events or omissions giving rise to the claim occurred in this judicial district, and/or a substantial part of the property that is the subject of this action is situated in this judicial district.

## FACTS

### Background—Defendants Carney and Freeze

12.     On June 6, 2016, Defendant Carney was indicted by a Grand Jury sitting in Geauga County, Ohio on six (6) counts, and on or about December 27, 2016, pled guilty to Grand Theft and Forgery ("Carney criminal conviction").

13.     Defendant Freeze was a registered securities representative with Fortune Financial Services, Inc. ("Fortune") from July 2015 through April 2017, and offered and sold AEH Notes to his Fortune clients and others.

14.     On or about October 15, 2015, Defendant Freeze entered into a Letter of Acceptance, Waiver and Consent ("AWC") with FINRA whereby he was suspended for ten (10) business days and assessed a $5,000 fine for borrowing money from a customer ("FINRA Suspension).

15.     On or about June 20, 2017, FINRA notified Defendant Freeze of  an investigation of Defendant Freeze relating to his recommendations of variable annuities.  On or about August 14,

2017, Defendant Freeze entered into another AWC with FINRA whereby he was permanently barred from the securities industry in all capacities for refusing to provide documents and information in connection with FINRA's investigation ("FINRA Bar").

**Defendant AEH and the Joint Venture**

16.     On or about May 31, 2016, Defendant AEH purportedly entered into a Joint Venture Agreement with D4 Energy Group, whereby Defendant AEH would act as a funding source to provide predevelopment working capital for a series of alternative energy processing plants ("J.V. Agreement").

17.      Defendant Carney signed the J.V. Agreement as the "authorized member" of Defendant AEH, six (6) days before he was indicted by an Ohio Grand Jury.

18.     In or about June 2016, Defendants Carney, Irey, and Freeze, on behalf of Defendant AEH, began to offer and sell investment opportunities to individuals, purportedly to raise funds for the alternative energy processing plants pursuant to the J.V. Agreement.

19.     Upon information and belief, Defendant DMC, through Defendant Toprani, began representing Defendants Irey and Freeze for unrelated matters prior to the J.V. Agreement, and, with Defendant Hammond, continued representing Defendants Irey and Freeze during the solicitation of investors on behalf of Defendant AEH.

20.     Upon information and belief, Defendant DMC Bradley was formed in or about January 2017. Thereafter, Defendants DMC and DMC Bradley, through Defendants Toprani and Hammond, represented Defendants Irey, and Freeze, and beginning in approximately April 2017, added Defendants AEH and Carney to the representation.

21.     Upon information and belief, Defendant Toprani drafted a Memorandum of Understanding initially used to solicit investors on behalf of Defendants AEH, Carney, Irey, and Freeze, and personally met with potential investors in the Defendants DMC and DMC Bradley offices located at1900 Main Street, Suite 207, Canonsburg, PA 15317 to solicit their investments.

22.     Upon information and belief, Defendant Toprani subsequently drafted the more formal promissory notes ("AEH Notes") and membership unit purchase agreements ("Membership Agreements") used to memorialize investments in Defendant AEH.

**Sale of the Membership Unit Purchase Agreement to Plaintiff Porreca**

23.     Plaintiff Porreca is currently 75 years old and is retired. He had previously purchased an annuity insurance product through Defendant Freeze.

24.     In or about July 2017, Defendant Freeze and Plaintiff Porreca had a telephone conversation in which Defendant Freeze  discussed an investment opportunity in Defendant AEH. Defendant Freeze advised Plaintiff Porreca that the invested funds would be used for an alternative energy processing plant in Greenville, SC pursuant to a Joint Venture Agreement between Defendant AEH and D4 Energy Group. Defendant Freeze provided Plaintiff Porreca with various documents by email, including a power point presentation and other documents which represented as follows:

a.      That $130 million had already been secured for the project;

b.      That the Greenville, SC project is ready to launch with an August 2017 closing of $130 million;  and

c.      That construction of the first plant began in April 2016 and is scheduled to be completed in October 2017.

25.     Plaintiff Porreca specifically questioned Defendant Freeze regarding the legitimacy of the investment. Defendant Freeze replied that he would not have left a high-salary position to work for AEH if it were not legitimate.

26.     After reviewing the materials provided to him,  and discussing the investment with Defendant Freeze, Plaintiff  Porreca decided to invest in Defendant AEH.

27.     On or about July 27, 2017, Defendant Carney, representing and on behalf of Defendant AEH, executed a Membership  Agreement in favor of Plaintiff Porreca ("Plaintiff's Membership Agreement") for the sale of 2,500 Membership Units in AEH in exchange for $100,000. An addendum to the agreement provides that on or before September 1, 2017, Defendant Freeze and/or The Maxximus Group LLC will repay the $100,000 to Plaintiff Porreca in exchange for 50% of all dividends and/or disbursements earned as a result of Plaintiff Porreca's ownership of the Membership Units.

A true and correct copy of Plaintiff's Membership  Agreement is attached hereto as Exhibit 1.

28.     When Plaintiff Porreca questioned Defendant Freeze why he would agree to the addendum, Defendant Freeze responded that he "would spend $100,000 to make a million."

29.     On or about July 28, 2017, Plaintiff Porreca wired $100,000 to Defendant AEH's PNC Bank account.

30.     Upon information and belief, at least 23 individuals invested in AEH Notes and/or Membership Agreements, at least 12 of whom invested prior to Plaintiff Porreca's investment. Upon information and belief, none of the individuals who invested in AEH have been repaid under the terms of the AEH Notes or Membership Agreements.

31.     In connection with the offer and sale of the Membership Agreement, Defendants AEH, Carney, Irey, and Freeze failed to disclose material facts to Plaintiff Porreca, including but not limited to:

a.      Defendant Carney's criminal conviction;

b.      Defendant Freeze's FINRA Suspension;

c.      That the AEH Membership Agreement was a "security" which was neither registered nor exempt from registration with the Securities and Exchange Commission ("SEC") and the West Virginia Securities Commission;

d.      That Defendant AEH, through at least Defendant Carney, was purportedly attempting to repay AEH investors by engaging in a fraudulent "prime bank trading platform;" and

e.      That, upon information and belief, none of the AEH investors had received payments under their respective AEH Notes or Membership Agreements.

32.     Plaintiff Porreca received an AEH Certificate dated July 27, 2017 which indicated ownership of 1,250 membership units in AEH.  In an attempt to convince Plaintiff Porreca that the payment from Defendant Freeze and/or The Maxximus Group LLC under the addendum was forthcoming, Plaintiff Porreca was also provided with a separate AEH Certificate indicating The

Maxximus Group LLC's ownership of 1,250 units. Subsequently, Plaintiff Porreca received a second certificate for 1,250 units in AEH, dated August 21, 2017.

33.     Upon information and belief, only some of the AEH investors received AEH membership units, raising questions concerning valuation of the units and equal treatment of investors. At no time did Plaintiff Porreca receive any information which would adequately value AEH membership units, and upon information and belief, the AEH membership units are virtually worthless.

**Plaintiff Porreca's AEH Note**

34.     In or before February 2018, Plaintiff Porreca expressed concerns that he had not received any payment under Plaintiff's Membership Agreement. In an effort to allay those concerns, Defendant Carney provided Plaintiff Porreca with an AEH Note as a replacement for the Membership Agreement ("Plaintiff's AEH Note") by email dated February 27, 2018. Plaintiff's AEH Note provides as follows:

      a.     The Maturity Date of the AEH Note is April 15, 2018;

      b.     The "earned fee" due Plaintiff Porreca on or before the Maturity Date is 50% of the principal loan value, equal to $50,000.  Thus, the total due, with earned fee and principal, is $150,000;

      c.     Plaintiff Porreca is granted 2,500 Membership Units in Defendant AEH;

      d.     In the event of default, the "outstanding principal balance and maximum earned hereunder" shall bear interest at 13.5% per year, calculated from the date of such default until fully paid; and

   e.  The proceeds received from the lender shall be used for expenses relating to the project development of Defendant AEH.

  A true and correct copy of Plaintiff's AEH Note is attached hereto as Exhibit 2.

  35. Plaintiff's AEH Note provides for a return of the $100,000 principal plus an "earned fee" of $50,000, representing a 50% return **in less than three months**. There is no indication in the AEH Note or other documents or information provided to Plaintiff Porreca regarding how Defendant AEH would generate profits to repay the AEH Note in such a short time period, particularly when Defendant AEH's own documents provided to Plaintiff Porecca and other AEH investors at that time state that the first plant would not be fully operational until fiscal 2019.

  36. The AEH Notes sold to investors varied with respect to the percentage of the "earned fee" (from 30% to 100%) and the term of the notes (from 30 days to three months), indicating unequal treatment of AEH noteholders.

  37. Plaintiff Porreca did not receive the payments promised in Plaintiff's AEH Note on or before the Maturity Date, nor has he received any payments to date relating to his investment in the AEH.

  38. Plaintiff Porreca did not sign the Membership Agreement because he believed that he would soon be repaid by Defendant Freeze. Plaintiff Porreca did not sign the AEH Note, believing that he could not trust any of the Defendants at that point.

  39. Plaintiff's Membership Agreement and Plaintiff's AEH Note are "securities," as that term is defined under Section 2(a) of the Securities Act of 1933 ("1933 Act"), 15 U.S.C.A. §77(b)(1) and Section 32-4-401(n) of the West Virginia Securities Act.

40.     Plaintiff's Membership Agreement and Plaintiff's AEH Note were not registered with the SEC or the West Virginia Securities Commission, nor were they exempt from registration.

41.     Federal and state securities laws require that all material facts be accurately disclosed to potential investors. Defendants failed to provide Plaintiff Porreca with material facts concerning the AEH investment, including but not limited to:

        a.      Defendant Carney's criminal conviction;

        b.      Defendant Freeze's FINRA Suspension;

        c.      Defendant Freeze's FINRA Bar;

        d.      That Plaintiff's Membership Agreement and Plaintiff's AEH Note were "securities" which were neither registered nor exempt from registration as required by the SEC and the West Virginia Securities Commission;

        e.      That Defendant AEH, through at least Defendant Carney, was purportedly attempting to repay AEH investors by engaging in a fraudulent "prime bank-trading platform;"

        f.      That Defendant AEH could not generate enough income to make payments to Plaintiff Porreca under Plaintiff's Membership Agreement and Plaintiff's AEH Note; and

        g.      That none of the investors in AEH had received any payments whatsoever under their respective investments.

**False Hopes and Intimidation Tactics**

42.     By at least February 2017, AEH investors were complaining to Defendants Carney, Irey, and Freeze that they were not receiving payments under their respective AEH Notes and Membership Agreements. In response, Defendant Carney provided periodic "updates" to AEH investors in order to allay investor concerns.

43.     Defendant Carney stated in "updates" that repayment on the AEH Notes, as well as the project funding for the J.V. Agreement, would be funded by a variety of sources, including "private placement trade platforms" conducted by Resolute Technology Trust LLC ("RTT").

44.     Documents provided by Defendants Carney, Irey, and Freeze to AEH investors describe the RTT "platforms" as buying and selling "prime  bank notes" in Europe and Asia with "zero risk to the investors."

45.     Several law enforcement and regulatory agencies have issued warnings to the public about "prime bank" scams, including the Federal Bureau of Investigation and the SEC. In the SEC's February 5, 2015 "Investor Alert: Prime Bank Investments are Scams," the SEC states: "All 'prime bank' investment programs are fraudulent."

46.     Defendant Carney continued to provide these "updates" to AEH Noteholders through at least Spring 2019, each "update" stating that either the funds for the repayment to noteholders would be obtained soon, or the funds were already deposited into a separate account and would be distributed to noteholders shortly. Many of these "updates" identified Defendants Hammond and Toprani as the AEH attorneys who would be facilitating the repayments, thus adding legitimacy to the proposed repayment.

47.     Many of the "updates" required AEH investors to complete a "Debt Repayment Worksheet" for the stated purpose of facilitating the repayment; however, the information requested in the worksheet should have already been known to Defendant AEH as the issuer of the securities.

48.     Defendant Toprani met with at least some AEH investors in the Defendants DMC and DMC Bradley in their Canonsburg, PA office to convince noteholders that the AEH program was legitimate and that the noteholders would be receiving payment in the near future. Defendants Toprani and Hammond were "cc'd" on many of "updates" even after it is believed they ended their legal representation.

49.     Simultaneous with providing the false "updates" to AEH noteholders, Defendants AEH and Carney, with the assistance of Defendants Hammond and Toprani, employed intimidation tactics in an effort to deter AEH investors from seeking information concerning the legitimacy of the AEH program and discussing the AEH investment with one another, including but not limited to:

     a.     Requiring AEH noteholders to sign a Mutual Non-Circumvention, Non-Disclosure Confidentiality Agreement ("Non-Disclosure Agreement"), which *inter alia* prohibits contact with third parties regarding the AEH program;

     b.     Expressly forbidding AEH investors from contacting D4 Energy Group, RTT, or anyone at Defendant AEH except for Defendant Carney;

     c.     Stating in various "updates" that any sharing of negative "unsubstantiated rumors" concerning the AEH program would be a violation of the "Non-Disclosure Agreement" and would subject the violator to legal action;

d.      Stating in at least one "update" that taking an adversarial position to Defendant AEH would be "tortious conduct" and would subject the violator to legal action; and

e.      Specifically identifying one AEH investor who "has made statements that are libelous and damaging" to the reputation of AEH and others.

50.     In at least one instance, Defendant Hammond used DMC Bradley letterhead to threaten an AEH investor with legal action when the investor attempted to obtain information concerning the AEH projects from a representative of D4 Energy Group.

51.     Defendants' actions set forth in paragraphs 42 through 50 above created a chilling effect on AEH investors' efforts to obtain information about their investments.

52.     In an "update" to AEH noteholders dated March 9, 2018, Defendant Carney admitted that "no profits have been made by AEH from its inception and has been operating strictly upon debt incurred via loans made to AEH."

**Attorney Defendants' Lack of Due Diligence**

53.     In the decision to commence representation of Defendants AEH, Carney, Irey, and Freeze, and to continue that representation until at least October 2017, Defendants DMC, DMC Bradley, Hammond and Toprani failed to exercise due care in recognizing and/or negligently or recklessly ignoring numerous red flags, including:

a.      Defendant Carney's criminal conviction;

b.      Defendant Freeze's FINRA Suspension;

c.      Defendant Freeze's FINRA Bar;

d.      That the Membership Agreements and AEH Notes were "securities" which were neither registered nor exempt from registration with the SEC, the West Virginia Securities Commission, and other state's securities agencies in which sales occurred ;

e.      That the AEH Notes promised repayment of principal and interest to noteholders within time periods ranging from thirty (30) days to three (3) months, when in fact offering documents provided to noteholders indicated that the first AEH processing plant would not be in operation until fiscal 2018 or 2019;

f.      That Defendant AEH, through at least Defendant Carney, was purportedly attempting to repay AEH noteholders by engaging in a fraudulent "prime bank trading platform;" and

g.      That Defendants Carney, Irey, and Freeze continued to solicit investors in Defendant AEH when none of the current AEH noteholders had received payments under their respective AEH Notes.

54.     Despite these "red flags," Defendants DMC, DMC Bradley, Hammond and Toprani agreed to represent Defendants AEH, Carney, Irey, and Freeze, and continued that representation until at least October 2017. During that time, the actions of Defendants DMC, DMC Bradley, Hammond, and Toprani, resulted in the continuation of the fraud perpetrated on AEH investors, including Plaintiff Porreca.

55.     Despite these "red flags," Defendant Toprani, on behalf of Defendants DMC and DMC Bradley, upon information and belief, drafted the Memorandum of Understanding initially

used to solicit investors and met with potential AEH investors to solicit their investments and, upon information and belief, drafted the AEH Notes and Membership Agreements.

56.    Defendant Toprani knew or should have known that potential investors in AEH would be guided by the Memorandum of Understanding, AEH Notes, and Membership Agreements in their respective investment decisions.

57.    Plaintiff Porreca has not received any payment whatsoever under the terms of the AEH Note, despite repeated requests to Defendant Freeze and other Defendants.

58.    Upon information and belief, Plaintiff Porreca has been the victim of a fraud, perpetrated by the intentional and/or negligent conduct of Defendants AEH, Carney, Irey, and Freeze, and by the negligent and/or reckless conduct of Defendants DMC, DMC Bradley, Hammond and Toprani.

59.    The fact that Defendants AEH, Carney, Irey, and Freeze were represented by Defendants DMC, DMC Bradley, Hammond, and Toprani added an element of legitimacy to the AEH investment. The fact that Defendants DMC, DMC Bradley, Hammond and Toprani participated in the false hopes and intimidation tactics set forth above created a chilling effect on any efforts of Plaintiff Porreca and other AEH noteholders to investigate the legitimacy of the AEH program.

60.    Defendants DMC, DMC Bradley, Hammond, and Toprani knew or should have known that their efforts on behalf of Defendants AEH, Carney, Irey, and Freeze set forth above would have the effect of legitimizing the AEH program, allaying investor concerns, and deterring investors' efforts to obtain accurate information concerning the AEH investment.

61.     Had AEH investors, prior to Plaintiff Porreca's investment, been privy to accurate information concerning the AEH program, they would likely have uncovered the fraud and Plaintiff Porreca and other subsequent investors would not have made their respective investments in the first place.

62.     Each of the "red flags" set forth in paragraph 53 above constitute material facts which Defendants DMC, DMC Bradley, Hammond, and Toprani were required to disclose to Plaintiff Porreca but failed or refused to do so.

63.     In view of the numerous "red flags" set forth in paragraph 53 above, a reasonable attorney in the same or similar circumstances would have discovered the fraud perpetrated on Plaintiff Porreca and other AEH investors by Defendants AEH, Carney, Irey, and Freeze.

## CAUSES OF ACTION

## COUNT 1

## OFFER AND SALE OF AN UNREGISTERED SECURITY
## IN VIOLATION OF SECTION 32-3-301 OF THE WEST VIRGINIA SECURITIES ACT

### (Defendants AEH, Carney, Irey, and Freeze)

64.     Plaintiff  Porreca hereby incorporates the allegations of paragraphs 1 through 63 by reference, as if fully set forth below.

65.     Defendants AEH, Carney, Irey, and Freeze offered and sold the Membership Agreement and AEH Note to Plaintiff Porreca in the state of West Virginia.

66.     The Membership Agreement and AEH Note are "securities" under Section 32-4-401(n) of the West Virginia Securities Act.

67.     No registration statement has been filed with the West Virginia Securities Commission with respect to the Membership Agreement and AEH Note.

68.     No exemption filings have been made with the West Virginia Securities Commission with respect to the Membership Agreement and AEH Note.

69.     As a result, Defendants AEH, Carney, Irey, and Freeze offered and sold an unregistered, non-exempt security to Plaintiff Porreca in violation of Section 32-3-301 of the West Virginia Securities Act;

70.     Defendants AEH, Carney, Irey, and Freeze are liable jointly and severally to Plaintiff Porreca pursuant to Section 32-4-410 of the West Virginia Securities Act, for the consideration paid by Plaintiff for the Membership Agreement and AEH Note, with interest thereon.

## COUNT II

## OFFER AND SALE OF AN UNREGISTERED SECURITY IN VIOLATION OF THE SECURITIES ACT OF 1933

### (Defendants AEH, Carney, Irey, and Freeze)

71.     Plaintiff Porreca hereby incorporates the allegations of paragraphs 1 through 70 by reference, as if fully set forth below.

72.     Defendants AEH, Carney, Irey, and Freeze, by engaging in the conduct described above, directly or indirectly, made use of means or instruments of transportation or communication in interstate commerce or of the mails, to offer to sell or to sell securities, or to carry or cause such securities to be carried through the mails of in interstate commerce for the purpose of sale or for delivery after sale.

73.     No registration statement and no exemption filings have been filed with the SEC with respect to the Membership Agreement and AEH Note;

74.     As a result, Defendants AEH, Carney, Irey, and Freeze offered and sold unregistered securities to Plaintiff Porreca without an exemption from registration in violation of Section 5 of the 1933 Act, 15 U.S.C.A. §77e.

75.     Defendants AEH, Carney, Irey, and Freeze are liable jointly and severally to Plaintiff Porreca for the consideration paid by the Plaintiff for the Membership Agreement and AEH Note, with interest thereon.

**COUNT III**

**SECURITIES FRAUD**

**(Section 32-1-101 of the West Virginia Securities Act)**

**(Defendants AEH, Carney, Irey, and Freeze)**

76.     Plaintiff Porreca hereby incorporates the allegations of paragraphs 1 through 75 by reference, as if fully set forth below.

77.     In offering to sell the Membership Agreement and AEH Note to Plaintiff Porreca, Defendants AEH, Carney, Irey, and Freeze omitted to state material facts necessary in order to make statements made, in light of the circumstances under which they were made, not misleading, including but not limited to the following:

        a.     Defendant Carney's criminal conviction;

        b.     Defendant Freeze's FINRA Suspension;

        c.     Defendant Freeze's FINRA Bar;

18

d. That the Membership Agreement and the AEH Note were "securities" which was neither registered nor exempt from registration as required by the SEC and the West Virginia Securities Commission;

e. That Defendant AEH, through at least Defendant Carney, was purportedly attempting to repay AEH investors by engaging in a fraudulent "prime bank trading platform;"

f. That Defendant AEH could not generate enough income to make payments to Plaintiff Porreca under the Membership Agreement and AEH Note; and

g. That, upon information and belief, none of the current or previous investors of AEH had received payments equal to those promised in their respective promissory investments.

78. Had Defendants AEH, Carney, Irey, and Freeze made the statements set forth above, Plaintiff Porreca would not have agreed to invest in the Membership Agreement and AEH Note.

79. Defendants AEH, Carney, Irey, and Freeze's omissions to state material facts in connection with the AEH Note caused Plaintiff Porreca to suffer damages of at least the principal amount of the Membership Agreement and AEH Note plus interest.

80. Defendants AEH, Carney, Irey, and Freeze are liable jointly and severally to Plaintiff Porreca pursuant to Section 32-1-101 of the West Virginia Securities Act, for the consideration paid by the Plaintiff for the Membership Agreement and AEH Note, with interest thereon.

## COUNT IV

### SECURITIES FRAUD

### SECTIONS 10(B) OF THE SECURITIES EXCHANGE ACT OF 1934

### (15 U.S.C. §78j(b) and SEC Rule 10b-5)

### (Defendants AEH, Carney, Irey, and Freeze)

81.     Plaintiff Porreca hereby incorporates the allegations of paragraphs 1 through 80 by reference, as if fully set forth below.

82 .    In violation of Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder, Defendants AEH, Carney, Irey, and Freeze, in connection with the Membership Agreement and the AEH Note, by use of the means and instrumentalities of interstate commerce and of the mails, employed one or more device, scheme or artifice to defraud the Plaintiff; by omitting to state one or more material facts to the Plaintiff necessary in order to make the statements made, in the light of the circumstances in which they were made, not false and misleading, and engaged in other acts, practices or courses of business which operated to defraud and deceive the Plaintiff, all to his financial harm.

83.     In offering to sell the Membership Agreement and AEH Note to Plaintiff Porreca, Defendants AEH, Carney, Irey, and Freeze omitted to state material facts necessary in order to make statements made, in light of the circumstances under which they were made, not misleading, including but not limited to the following:

   a.      Defendant Carney's criminal conviction;

   b.      Defendant Freeze's FINRA Suspension;

c.      Defendant Freeze's FINRA Bar;

d.      That the Membership Agreement and the AEH Note were "securities" which was neither registered nor exempt from registration as required by the SEC and the West Virginia Securities Commission;

e.      That Defendant AEH, through at least Defendant Carney, was purportedly attempting to repay AEH investors by engaging in a fraudulent "prime bank-trading platform;"

f.      That Defendant AEH could not generate enough income to make payments to Plaintiff Porreca under the Membership Agreement and the AEH Note; and

g.      That, upon information and belief, none of the current or previous investors of AEH had received payments equal to those promised in their respective investments.

84.      Defendants' omissions were intended to deceive, and did in fact deceive, the Plaintiff, for the purpose of causing the Plaintiff to invest in the Membership Agreement and the AEH Note.

85.      Had Defendants AEH, Carney, Irey, and Freeze made the statements set forth above, Plaintiff Porreca would not have agreed to invest in the Membership Agreement and the AEH Note.

86.      Defendants AEH, Carney, Irey, and Freeze's omissions to state material facts in connection with the Membership Agreement and the AEH Note caused Plaintiff Porreca to suffer damages of at least the principal amount of the Membership Agreement and AEH Note plus interest.

87.    Defendants AEH, Carney, Irey, and Freeze are liable jointly and severally to Plaintiff Porreca for the consideration paid by the Plaintiff for the Membership Agreement and AEH Note, with interest thereon.

## COUNT V

## BREACH OF CONTRACT/DEFAULT ON THE AEH NOTE

## (Defendants AEH, Carney, Irey, and Freeze)

88.    Plaintiff Porreca hereby incorporates the allegations of paragraphs 1 through 87 by reference, as if fully set forth below.

89.    Defendants AEH, Carney, Irey, and Freeze have failed to make any payments under the AEH Note.

90.    Defendants AEH, Carney, Irey, and Freeze owe Plaintiff Porreca at least $150,000 in principal and "earned fees," plus interest based on default of 13.5 % per year.

91.    Due to such breach and default, Plaintiff Porreca has suffered damage of at least $150,000.

## COUNT VI

## NEGLIGENT MISREPRESENTATION

## (Defendants AEH, Carney, Irey, and Freeze)

92.    Plaintiff Porreca hereby incorporates the allegations of paragraphs 1 through 91 by reference, as if fully set forth below.

93.     In offering to sell the Membership Agreement and AEH Note to Plaintiff Porreca, Defendants AEH, Carney, Irey, and Freeze failed to provide material information to Plaintiff Porreca to induce him to invest, including but not limited to:

a.     Defendant Carney's criminal conviction;

b.     Defendant Freeze's FINRA Suspension;

c.     Defendant Freeze's FINRA Bar;

d.     That the Membership Agreement and AEH Note were "securities" which was neither registered nor exempt from registration as required by the SEC and the West Virginia Securities Commission;

e.     That Defendant AEH, through at least Defendant Carney, was purportedly attempting to repay AEH investors by engaging in a fraudulent "prime bank-trading platform;"

f.     That Defendant AEH could not generate enough income to make payments to Plaintiff Porreca under the Membership Agreement and AEH Note; and

g.     That, upon information and belief, none of the current or previous investors of AEH had received payments equal to those promised in their respective promissory notes.

94.     Plaintiff Porreca detrimentally and justifiably relied upon  the information provided by Defendants but as an unsophisticated investor did not understand or have the requisite knowledge to know that there were material omissions. Had Defendants AEH, Carney, Irey, and

Freeze made the statements set forth above, Plaintiff Porreca would not have agreed to invest in the Membership Agreement and AEH Note.

95.     Defendants AEH, Carney, Irey, and Freeze's omissions to state material facts in connection with the AEH Note caused Plaintiff Porreca to suffer damages of at least the principal amount of the Membership Agreement and AEH Note plus interest.

96.     Defendants AEH, Carney, Irey, and Freeze are liable jointly and severally to Plaintiff  Porreca for the consideration paid by the Plaintiff for the Membership Agreement and AEH Note, with interest thereon.

**COUNT VII**

**FRAUDULENT MISREPRESENTATION**

**(Defendants AEH, Carney, Irey, and Freeze)**

97.     Plaintiff Porreca hereby incorporates the allegations of paragraphs 1 through 96 by reference, as if fully set forth below.

98.     In offering to sell the AEH Note to Plaintiff Porreca, Defendants AEH, Carney, Irey, and Freeze knowingly failed to provide material information to Plaintiff Porreca to induce him to invest in the Membership Agreement and AEH Note, including but not limited to:

      a.     Defendant Carney's criminal conviction;

      b.     Defendant Freeze's FINRA Suspension;

      c.     Defendant Freeze's FINRA Bar;

      d.     That the Membership Agreement and AEH Note were "securities" which were neither registered nor exempt from registration as required by the SEC and the West Virginia Securities Commission;

e.   That Defendant AEH, through at least Defendant Carney, was purportedly attempting to repay AEH investors by engaging in a fraudulent "prime bank trading platform;"

f.   That Defendant AEH could not generate enough income to make payments to Plaintiff Porreca under the Membership Agreement and AEH Note; and

g.   That, upon information and belief, none of the current or previous investors of AEH had received payments equal to those promised in their respective promissory notes.

99.   Plaintiff Porreca detrimentally and justifiably relied upon the information provided by Defendants, but as an unsophisticated investor did not understand or have the requisite knowledge to know that there were material omissions.  Had Defendants AEH, Carney, Irey, and Freeze made the statements set forth above, Plaintiff Porreca would not have agreed to invest in the Membership Agreements and AEH Note.

100.   Defendants AEH, Carney, Irey, and Freeze's omissions to state material facts in connection with the Membership Agreement and AEH Note caused Plaintiff Porreca to suffer damages of at least the principal amount of the Membership Agreement and AEH Note plus interest.

101.   Defendants AEH, Carney, Irey, and Freeze are liable jointly and severally to Plaintiff Porreca for the consideration paid by the Plaintiff for the Membership Agreement and AEH Note, with interest thereon.

**COUNT VIII**

**NEGLIGENT MISREPRESENTATION**

**(Defendants DMC, DMC Bradley, Hammond, and**
**Toprani)**

102.    Plaintiff Porreca hereby incorporates the allegations of paragraphs 1 through 101 by reference, as if fully set forth below.

103.    One who, in the course of his business, profession or employment, supplies false, incomplete and inaccurate information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if the person fails to exercise reasonable care or competence in obtaining or communicating the information.

104.    Upon information and belief, Defendants DMC, DMC Bradley, and Toprani represented Defendants AEH in the offering of promissory notes to investors and  drafted the Memorandum of Understanding and, upon information and belief, the Membership Agreements and AEH Notes.

105.    The Membership Agreements and AEH Notes failed to disclose the following material information:

      a.      Defendant Carney's criminal conviction;

      b.      Defendant Freeze's FINRA Suspension;

      c.      Defendant Freeze's FINRA Bar;

d.      That they were "securities" which were neither registered nor exempt from registration as required by the SEC and the West Virginia Securities Commission;

e.      That Defendant AEH, through at least Defendant Carney, was purportedly attempting to repay AEH investors by engaging in a fraudulent "prime bank trading platform;"

f.      That Defendant AEH could not generate enough income to make payments to Plaintiff Porreca under the Membership Agreement and AEH Note; and

g.      That none of the current or previous investors of AEH had received payments equal to those promised in their respective promissory notes.

106.    Defendants DMC, DMC Bradley, and Toprani knew or should have known of the information set forth above and failed to exercise reasonable care in communicating the information to Plaintiff .

107.    Defendants DMC, DMC Bradley, Hammond, and Toprani participated in the false "updates" and intimidation tactics set forth in paragraphs 42 through 50 above, which acted to deter AEH investors from investigating the legitimacy of the AEH investment and uncovering the fraud.

108.    Had the fraud been uncovered, Plaintiff Porreca would not have invested in Defendant AEH.

109.    Defendants DMC, DMC Bradley, Hammond, and Toprani knew or should have known that the AEH Notes were required to be registered with the SEC and the West Virginia Securities Commission.

110.    Defendants DMC, DMC Bradley, Hammond, and Toprani are therefore liable jointly and severally for the damages caused to Plaintiff Porreca.

**COUNT IX**

**NEGLIGENCE**

**(Defendants DMC, DMC Bradley, Hammond, and Toprani)**

111.    Plaintiff Porreca hereby incorporates the allegations of paragraphs 1 through 110 by reference, as if fully set forth below.

112.    Defendants DMC, DMC Bradley, Hammond, and Toprani were in an advantageous position to discover the fraud being perpetrated by Defendants AEH, Carney, Irey, and Freeze. In view of the numerous red flags described in this Complaint, a reasonable person in the same or similar circumstance would have discovered the fraud.

113.    Defendants DMC, DMC Bradley, Hammond, and Toprani owed a duty to Plaintiff Porreca and other AEH investors due to Defendants' involvement in the solicitation of investors and the false information and intimidation tactics employed by Defendants AEH, Carney, Irey, and Freeze.

114.    Due to the negligence of Defendants DMC, DMC Bradley, Hammond, and Toprani, the fraud perpetrated by Defendants AEH, Carney, Irey, and Freeze continued and resulted in the proximate cause of Plaintiff Porreca's damages.

115.    Defendants DMC, DMC Bradley, Hammond, and Toprani are therefore liable jointly and severally for the damages caused to Plaintiff Porreca.

**Prayer For Relief**

WHEREFORE, Plaintiff respectfully prays that he be awarded:

A.      Judgment on the AEH Note in the amounts due and owing thereon, including interest;

B.      Actual damages to be proved at trial;

C.      Punitive Damages

D.      All costs and expenses, including without limitation reasonable attorneys' fees and expenses;

E.      Such other and further relief that the Court deems just and proper.

Dated:  July 17, 2019           /s/   Scott A. Lane

Scott A. Lane
Pa. I.D. 51124
The Law Office of Scott A. Lane, LLC
P.O. Box 368
Ingomar, PA 15127
(412) 780-5240
scott@scottlanelaw.com

/s/   Alice L. Stewart

Alice L. Stewart
Pa. I.D. 77649
P.O. Box 7226
Pittsburgh, PA 15213
(412) 624-7857
als234@pitt.edu

/s/    Michael A. Nagy

Michael A. Nagy
Pa. I.D. 208955
The Law Office of Michael A. Nagy, LLC
175 Shady Lane
Apollo, PA 15613
(724) 713-8228
michael@michaelanagylaw.com

Counsel for Plaintiff Donald V. Porreca