# UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| RYAN S. SEIFERT, ) | |
| ) | |
| Plaintiff, ) | **CIVIL ACTION NO.: 19-cv-0854** |
| ) | |
| v. ) | |
| ) | |
| ALTERNATIVE ENERGY HOLDINGS, LLC; ) | |
| KEVIN T. CARNEY; THE IREY GROUP, LLC; ) | |
| ROBERT IREY; JONATHAN FREEZE; ) | |
| DODARO, MATTA & CAMBEST, PC; and ) | |
| STEVEN M. TOPRANI. ) | |
| ) | |
| Defendants. ) | |
| ) | |

## AMENDED COMPLAINT

Plaintiff, Ryan S. Seifert, by and through his undersigned attorneys, hereby files this Amended Complaint against Alternative Energy Holdings, LLC, Kevin T. Carney, The Irey Group, LLC, Robert Irey, Jonathan Freeze, Dodaro, Matta & Cambest, P.C., and Steven M. Toprani, stating as follows:

## PARTIES

1.      Plaintiff Ryan S. Seifert ("Seifert") is an adult individual who currently resides in Zebulon, North Carolina. At all times material herein, Plaintiff Seifert resided in Canonsburg, Pennsylvania.

2.      Defendant Alternative Energy Holdings, LLC ("AEH") was at all times material herein a Florida limited liability company with addresses at 3030 N. Rocky Point Drive, Tampa, Florida 33607 and 7635 Fields Road, Chagrin Falls, Ohio 44023. As of approximately September

27, 2019, Defendant AEH is in "administrative dissolution" by the Florida Department of Corporations.

3.      Defendant Kevin T. Carney ("Carney") is an adult individual who, upon information and belief, resides at 23317 Williams Ave., Euclid, Ohio 44123 . At all times material herein, Defendant Carney was the Manager and CEO of Defendant AEH.

4.      Defendant The Irey Group, LLC ("Irey Group") was at all times material herein a Florida limited liability company with an address of 4000 Mason Lane, Apartment 4409, Pittsburgh, Pennsylvania 15205.

5.      Defendant Robert Irey ("Irey") is an adult individual who, upon information and belief, resides at 4000 Mason Lane, Apartment 4409, Pittsburgh, PA 15205. At all times material herein, Defendant Irey was a Manager of Defendant AEH and the Managing Member of Irey Group.

6.      Defendant Jonathan Freeze ("Freeze") is an adult individual whose last known address is 3000 Mason Lane, Apartment. 3401, Pittsburgh, PA 15205. At all times material herein, Defendant Freeze was a Manager of Defendant AEH. Defendant Freeze was a registered stockbroker from October 1995 to April 2017.  He was permanently barred from the securities industry by the Financial Industry Regulatory Authority ("FINRA") in August 2017.

7.      Defendant Dodaro, Matta & Cambest, P.C. ("DMC") is a law firm located at Southpoint Town Center, 1900 Main Street, Suite 207, Canonsburg, PA 15317.

8.      Defendant DMC holds itself out to the public as a well-established law firm that offers a wide range of legal and advocacy services for both public and private clients, offering legal services across several areas including corporate and business law.

9.      Defendant DMC specifically represents to the public that it has "'boots on the ground' experience" that allows Defendant DMC to meet its clients' needs "in a wide array of

energy matters."

10.     Defendant Steven M. Toprani ("Toprani") was at all times material herein a partner with Defendants DMC.

11.     Defendant Toprani held himself out to the public as being a former District Attorney with extensive experience in criminal law, litigation, business law, and commercial real estate.

## JURISDICTION AND VENUE

12.      This Court has jurisdiction over the subject matter of this action pursuant to Section 27 of the Securities Exchange Act of 1934, as amended (15 U.S.C. §78(a) *et seq*.) and 28 U.S.C. §1331. This Court has supplemental jurisdiction over the state law claims under 28 U.S.C. §1367.

13.     Venue is proper in this district under 28 U.S.C. § 1391(b)(2), because a substantial part of the events or omissions giving rise to the claim occurred in this judicial district, and/or a substantial part of the property that is the subject of this action is situated in this judicial district.

## FACTS

### Background—Defendants Carney and Freeze

14.     On June 6, 2016, Defendant Carney was indicted by a Grand Jury sitting in Geauga County, Ohio on six (6) counts relating to investments in Global Green Advisor Partners, LLC, a Florida limited liability company for which Defendant Carney was a Manager. Defendant Carney pled guilty to Grand Theft and Forgery on or about December 27, 2016 ("Carney criminal conviction").

15.     Defendant Freeze was a registered securities representative with Fortune Financial Services, Inc. ("Fortune") from July 2015 through April 2017, and offered and sold AEH investments to his Fortune clients and others.

16.     On or about October 15, 2015, Defendant Freeze entered into a Letter of Acceptance, Waiver and Consent ("AWC") with FINRA whereby he was suspended for ten (10) business days and assessed a $5,000 fine for borrowing money from a customer ("FINRA Suspension).[1]

17.     On or about June 20, 2017, FINRA notified Defendant Freeze of an investigation of Defendant Freeze relating to his recommendations of variable annuities. On or about August 14, 2017, Defendant Freeze entered into another AWC with FINRA whereby he was permanently barred from the securities industry in all capacities for refusing to provide documents and information in connection with FINRA's investigation ("FINRA Bar").

**Defendant AEH and the Joint Venture**

18.     On or about May 31, 2016, Defendant AEH purportedly entered into a Joint Venture Agreement with D4 Energy Group, whereby Defendant AEH would act as a funding source to provide predevelopment working capital for a series of alternative energy processing plants ("J.V. Agreement").

19.     Defendant Carney signed the J.V. Agreement as the "authorized member" of Defendant AEH, six (6) days before he was indicted by an Ohio Grand Jury.

---

[1] FINRA Rule 3240 governs borrowing between registered brokers and their customers. Borrowing from customers is strictly prohibited unless certain conditions are met. A registered broker may only borrow from a customer if the broker's member firm has a written policy in place that governs such activity. If there are no written procedures in place at the firm, then no borrowing may occur. If there are written guidelines, the broker must follow all of those internal requirements. In addition to meeting all internal requirements of the firm, the loan must meet certain criteria expressly laid out in Rule 3240. Finally, all broker-customer borrowing arrangements must follow certain notification requirements. A broker seeking to obtain a loan from a customer must notify their member firm of the details of the proposed transaction before actually executing the transaction. At that point, the firm's compliance personnel will be responsible for reviewing the proposed arrangement and determining if it should be approved. If approval is not expressly given, then the broker must not go forward with the proposed arrangement. This is where Freeze ran afoul of FINRA's regulatory rules and his firm's internal policies. The October 2015 AWC specifies that Freeze failed to provide his firm with prior notice of the loan and failed to obtain prior written pre-approval for the loan from the firm.

20.     In or about June 2016, Defendants Carney, Irey, and Freeze, on behalf of Defendant AEH, began to offer and sell investment opportunities to individuals, purportedly to raise funds for the alternative energy processing plants pursuant to the J.V. Agreement. Most of the individuals solicited by Defendants Irey and Freeze were former clients of Defendant Freeze or residents of the apartment complex where Defendants Irey and Freeze resided and knew each other socially or professionally from their mutual ties with the local community.

21.     Upon information and belief, Defendant DMC, through Defendant Toprani, began representing Defendants Irey and Freeze in relation to their solicitation of investors to secure financing for "various energy projects" for Defendant AEH, during which period of representation the investments were funneled through two entities controlled by Defendant Irey, the Irey Group and ACES America LLC ("ACES America").

22.     In other words, rather than having investors directly invest in Defendant AEH, Defendants Irey and Freeze were utilizing Promissory Notes and a Memorandum of Understanding which indicated that investors' money was being paid to either the Irey Group or ACES America in order to fund alternative energy projects being operated by Defendant AEH.

23.     Upon information and belief, Defendant DMC, through Defendant Toprani represented Defendants Irey and Freeze during the solicitation of investors on behalf of Defendant AEH during the period of time that investors' money was being diverted into either the Irey Group or ACES America.

24.     Upon information and belief, Defendant Toprani was involved in the drafting, review and/or approval of the  Memorandum of Understanding  and promissory notes in the Irey Group and ACES America initially used to solicit investors on behalf of Defendants AEH, Carney,

Irey, and Freeze, and personally met with potential investors in the Defendant DMC offices located at 1900 Main Street, Suite 207, Canonsburg, PA 15317 to solicit their investments.

25.     Upon information and belief, Defendant Toprani, along with another DMC attorney, Michael J. Hammond ("Hammond"), was subsequently involved in the drafting, review and/or approval of  the more formal promissory notes ("AEH Notes") and membership unit purchase agreements ("Membership Agreements") used to memorialize investments in Defendant AEH.

26.     In the alternative, upon information and belief, Defendant Toprani was aware of his co-Defendants' use of the Memorandum of Understanding and Promissory Notes to memorialize investments in The Irey Group, LLC, ACES America, and Defendant AEH and condoned the use of said agreements.

### Sale of  Irey Group Note to Plaintiff Seifert

27.     Plaintiff Seifert is currently 32 years old and is a Quality Assurance Engineer for a network infrastructure company that specializes in towers, small cells, and fiber optic networks. In or about February 2016, his employer transferred him to Pittsburgh for a 15-month period, during which time he resided at an apartment complex at 1400 Main Street, Canonsburg, PA. Defendants Irey and Freeze also resided at this apartment complex, and befriended Plaintiff Seifert during this period.

28.     Beginning in or about October 2016, Defendants Irey and Freeze discussed with Plaintiff Seifert an investment opportunity in Defendant AEH. Defendants Irey and Freeze advised Plaintiff Seifert that the invested funds would be used for an alternative energy processing plant in Greenville, SC pursuant to a Joint Venture Agreement between Defendant AEH and D4 Energy Group.

29.     Defendant Irey specifically stated the following to Plaintiff Seifert concerning the investment opportunity:

      a.     That the technology used by AEH "was proven" and that AEH already had a plant "up and running" overseas;

      b.     that AEH had investors from India, and in support thereof, Defendant Irey showed Plaintiff Seifert what was purported to be copies of passports and proof of funds; and

      c.     that Plaintiff Seifert's invested funds would specifically be used as a short-term investment to keep an engineer on the project until regulatory restrictions were lifted and funds could be received from overseas.

30.     As a result of discussions with Defendants Irey and Freeze, Plaintiff Seifert decided to invest in Defendant AEH.

31.     On or about October 20, 2016, Defendant Irey, representing and on behalf of  the Defendants Irey Group and AEH, executed a Promissory Note in favor of Plaintiff Seifert ("Plaintiff's Irey Group Note") in the principal amount of $30,000. Plaintiff's Irey Group Note provides as follows:

      a.     That the investment funds will be used "to fund short term costs associated with an alternative energy project being operated by" AEH;

      b.     That it is expected that the alternative energy project will be fully funded within sixty (60) days of the execution of Plaintiff's Irey Group Note;

c.     That Defendants Irey Group and Irey promise to repay the principal sum of $30,000 and an additional $30,000 "from fees earned as the intermediary for financing the alternative energy project" ("earned fee") within sixty (60) days of the execution of Plaintiff's Irey Group Note;

d.     That in the event that the AEH project "fails to fully, successfully and completely fund," Defendants Irey Group and Irey will repay the principal amount of $30,000 and the earned fee amount of $30,000 to Plaintiff Seifert on or before December 20, 2016.

A true and correct copy of Plaintiff's Irey Group Note is attached hereto as Exhibit 1.

32.     Plaintiff Seifert understood, based upon the representations of Defendants Irey and Freeze, that all investment funds would be used to further project development of Defendant AEH pursuant to the J.V. Agreement.

33.     Plaintiff's Irey Group Note provides for a return of the $30,000 principal plus payment of an earned fee of $30,000, representing a 100% return **in sixty days**. There is no indication in Plaintiff's Irey Group Note or other documents or information provided to Plaintiff Seifert regarding how Defendant AEH would generate profits to repay Plaintiff's Irey Group Note in such a short time period.

34.     On or about October 20, 2016, Plaintiff Seifert met with Defendant Irey and handed him a check in the amount of $30,000 payable to the Irey Group, representing his investment in the Irey Group Note.

35.     In connection with the offer and sale of Plaintiff's Irey Group Note, Defendant Irey made an untrue statement of material fact to Plaintiff Seifert, specifically that Defendant AEH already had a plant "up and running" overseas; when in fact, upon information and belief, Defendant AEH has never had a plant in operation.

36.     Plaintiff's Irey Group Note, drafted, reviewed and/or approved, upon information and belief by Defendant Toprani, and offered and sold to Plaintiff Seifert by Defendants Carney and Freeze, contained material misrepresentations, including:

> a.     That Plaintiff Seifert would be repaid the principal sum of $30,000 and an additional $30,000 "from fees earned as the intermediary for financing the alternative energy project" ("earned fee") within sixty (60) days of the execution of Plaintiff's Irey Group Note; when in fact no such repayment was made and Defendants had no reasonable basis to believe such a repayment would occur; and

> b.     That in the event that the AEH project "fails to fully, successfully and completely fund," Defendants Irey Group and Irey will repay the principal amount of $30,000 and the earned fee amount of $30,000 to Plaintiff Seifert on or before December 20, 2016; when in fact no such repayment was made and Defendants had no reasonable basis to believe such a repayment would occur.

37.     In connection with the offer and sale of Plaintiff's Irey Group Note, Defendants failed to disclose material facts to Plaintiff Seifert, including but not limited to:

> a.     Defendant Carney's criminal conviction;

> b.     Defendant Freeze's FINRA Suspension;

c.     That Plaintiff's Irey Group Note was a "security" which was neither registered nor exempt from registration with the U.S. Securities and Exchange Commission ("SEC") and the Pennsylvania Department of Banking and Securities ("DOBS"); and

d.     That Defendant AEH could not generate enough income to make payments to Plaintiff Seifert under Plaintiff's Irey Group Note.

38.     In the solicitation of Plaintiff Seifert to make the investment, Defendants Irey and Freeze never asked questions concerning Plaintiff's net worth, income, investment objectives, investment experience, or risk tolerance.

39.     Plaintiff Seifert was not an "accredited investor" as that term is defined in SEC Rule 501 (17 C.F.R. §230.501), and did not have such knowledge and experience in financial and business matters to be capable of evaluating the merits and risks of the investment.

40.     Plaintiff Seifert did not receive the payments promised in Plaintiff's Irey Group Note at the end of the sixty (60) day period, nor has he received any payments to date relating to his investment in the note.

41.     Plaintiff's Irey Group Note is a "security," as that term is defined under 15 U.S.C.A. §78(c)(A)(10),  and Section 102(t) of the Pennsylvania Securities Act of 1972 ("1972 Act"), 70 P.S. §1-102(t).

42.     Defendant Carney made several trips to Pittsburgh to meet with AEH investors, including Plaintiff Seifert. During one such trip shortly before the repayment of Plaintiff's Irey Group Note was due, Defendant Carney promised a job in the new AEH plant to Plaintiff Seifert.

43.     Plaintiff Seifert had numerous conversations with Defendants Irey, Freeze, and Carney regarding the nonpayment under Plaintiff's Irey Group Note, during which these defendants made promises of repayment.

44.     Specifically, Defendant Irey sent Plaintiff Seifert numerous text messages and emails with promises of repayment, including but not limited to the following:

a.     October 21, 2016: "It looks like you will be repaid in two weeks. How's that work for you?" To which Plaintiff Seifert replied: "I wouldn't give my life savings to just anybody."

b.     December 1, 2016: "We all have a wonderful Christmas ahead."

c.     April 18, 2017: Defendant Irey confirmed an agreement with Plaintiff Seifert whereby Defendant Irey would repay the principal amount of $30,000, plus the additional earned fee of $30,000, plus two additional payments of $50,000 each from the closing on each of the first two AEH plants ("April 18, 2017 Agreement").

d.     May 16, 2017: "JV agreement was executed this week. Proof of funds were provided yesterday. Payment schedule to be received by Monday."

e.     May 18, 2017: "Expecting to receive payment schedule tomorrow."

f.     June 11, 2017: "Funds hit Morgan Stanley tomorrow. PNC Thursday. Release to you the moment we clear PNC ACCT."

g.     July 20, 2017: "MTN trade is funding first. It trades this coming Mon-Thurs Settles out to RTT on Friday. We will receive funds on the following Wed." and

     h.     July 20, 2017: Email from Defendant Irey providing various documents. "The most important one I direct your attention to is the MTN [Medium Term Note] funding loan for company debts. Your note is being paid through this disbursement and will be confirmed to you via our attorney the latter part of next week."

**Defendant Irey's Repayment Agreement**

45.     Plaintiff Seifert continued to have discussions with Defendants Irey, Freeze, and Carney concerning nonpayment under Plaintiff's Irey Note and under the April 18, 2017 Agreement.

46.     As a result of these discussions, Defendant Irey sent Plaintiff Seifert an email dated January 12, 2018 entitled "Subject: Memo Outline for Repayment of Note and Bonus from Robert Irey" ("Irey Repayment Memo"). The Irey Repayment Memo acknowledges that Defendant Irey "failed to meet " the obligation of Plaintiff's Irey Group Note and that Defendant Irey is "now in a position where I can repay this debt and plan to share a bit of the bounty of my success with you as follows:

**On February 15, 2018**, you will receive repayment of the principal amount of the Promissory Note for $30,000. This amount is tax free.

**On March 15, 2018**, you will receive $30,000 in fee which will be subject to tax.

**On April 15, 2018** and each month thereafter for a total of twelve months, you will receive a bonus payment of $25,000 per month. The total of the twelve bonus payments is $300,000."

(emphasis in original) A true and correct copy of the Irey Repayment Memo is attached hereto as Exhibit 2.

47.     Plaintiff Seifert continued to receive excuses for nonpayment from Defendants Irey, Freeze, and Carney. Specifically, Defendant Irey continued to send to Plaintiff Seifert text messages, including but not limited to the following:

a.     August 10, 2018: "The administrative hold on our funds is still on. . . Only info provided is that it is on the lender and they expect resolution any day. . . ." "If you want I can put you in touch with my attorney who can share same details and assure you that he has been instructed to issue your payment per our agreement upon receipt of funds into his IOLTA trust account. His name is Atty William Brandstetter."

b.     September 13, 2018: "Also, I received a call this evening with an update from my funder. He was informed today that the administrative hold on his accounts will be lifted sometime next week. This means when this happens, his funds will be free to flow to my attorney."

c.     November 10, 2018: "Our funder is expecting to have his funds fully released sometime this week."

48.     On or about August 18, 2017, Defendant Freeze left a voice mail for Plaintiff Seifert stating that $500 million had been deposited for the MTN trade but then he blamed the failure of the transaction on "the investors" by stating that the money was returned to "the investors" because "the investors" did not use "one of the five banks" they were allowed to use for the MTN trade.

49.     In the August 18, 2017 voicemail Defendant Freeze further represented that there were "two other things on the trade platform that are happening in the next week or two" and that

there were a couple of other groups that want to do plants in their cities, and he stated that he was highly confident something positive would happen in the next couple of weeks.

50.     On or about November 29, 2018, Defendant Irey arranged a conference call with himself, Attorney Brandstetter,  Plaintiff Seifert, and another AEH investor, during which Attorney Brandstetter stated that he had personally verified that funds sufficient to repay all Defendant AEH investors were in an account ready to be released to his IOLTA account and that he would handle those repayments as soon as the money was released.

**False Hopes and Intimidation Tactics**

51.     By at least February 2017, AEH investors were complaining to Defendants Carney, Irey, and Freeze that they were not receiving payments under their respective AEH Notes, Membership Agreements, and investments through Irey Group and ACES America. In response, Defendant Carney provided periodic "updates" to AEH investors in order to allay investor concerns.

52.     Defendant Carney stated in "updates" that repayment on the AEH Notes and other AEH investments, as well as the project funding for the J.V. Agreement, would be funded by a variety of sources, including "private placement trade platforms" conducted by Resolute Technology Trust LLC ("RTT").

53.     Documents provided by Defendants Carney, Irey, and Freeze to AEH investors describe the RTT "platforms" as buying and selling "prime bank notes" in Europe and Asia with "zero risk to the investors."

54.     Several law enforcement and regulatory agencies have issued warnings to the public about "prime bank" scams, including the Federal Bureau of Investigation and the SEC. In the SEC's

February 5, 2015 "Investor Alert: Prime Bank Investments are Scams," the SEC states: "All 'prime bank' investment programs are fraudulent."

55.    Defendant Carney continued to provide these "updates" to AEH investors  through at least Spring 2019, each "update" stating that either the funds for the repayment to noteholders would be obtained soon, or the funds were already deposited into a separate account and would be distributed to noteholders shortly.

56.    Many of the "updates" required AEH investors to complete a "Debt Repayment Worksheet" for the stated purpose of facilitating the repayment; however, the information requested in the worksheet should have already been known to Defendant AEH as the issuer of the securities.

57.    Defendant Toprani met with at least some AEH investors in the Canonsburg, PA office of Defendant DMC to convince noteholders that the AEH program was legitimate and that the noteholders would be receiving payment in the near future. Defendant Toprani knew or should have known that his statements concerning the legitimacy of Defendant AEH would be shared with other AEH Noteholders. Defendant Toprani was "cc'd" on many of Defendant Carney's "updates" even after it is believed they ended their legal representation.

58.    In a subsequent "update" to AEH noteholders dated March 9, 2018, Defendant Carney admitted that "no profits have been made by AEH from its inception and has been operating strictly upon debt incurred via loans made to AEH."

59.    Defendant Carney continued to provide several periodic "updates" to investors for another year through at least April 24, 2019.

60.    Defendant Carney sent another "update" on October 13, 2019 to AEH Noteholders, which referenced the Florida Department of Corporations' administrative dissolution" of Defendant

AEH and stated "AEH, LLC are continuing their efforts regarding the settlement of all debt and business affairs . . . ."

61.     Simultaneous with providing the false "updates" to AEH noteholders, Defendants AEH and Carney, with the assistance of Hammond and Defendant Toprani, employed intimidation tactics in an effort to deter AEH investors from seeking information concerning the legitimacy of the AEH program and discussing the AEH investment with one another, including but not limited to:

> a.     Requiring AEH noteholders to sign a Mutual Non-Circumvention, Non-Disclosure Confidentiality Agreement ("Non-Disclosure Agreement"), which *inter alia* prohibits contact with third parties regarding the AEH program;
>
> b.     Expressly forbidding AEH investors from contacting D4, RTT, or anyone at Defendant AEH except for Defendant Carney;
>
> c.     Stating in various "updates" that any sharing of negative "unsubstantiated rumors" concerning the AEH program would be a violation of the "Non-Disclosure Agreement" and would subject the violator to legal action;
>
> d.     Stating in at least one "update" that taking an adversarial position to Defendant AEH would be "tortious conduct" and would subject the violator to legal action; and
>
> e.     Specifically identifying one AEH investor by name who "has made statements that are libelous and damaging" to the reputation of AEH and others.

62.     Defendants' actions set forth in paragraphs 51 through 61 above created a chilling effect on AEH investors' efforts to obtain information about their investments.

63.     Defendants' actions set forth in paragraphs 51 through 61 above also created and reinforced an air of legitimacy to the AEH investment.

64.     Defendants' actions set forth in paragraphs 51 through 61 above perpetuated the fraud on AEH investors that AEH was a credible venture that would be doing significant future business with D4.

65.     In a subsequent "update" to AEH noteholders approximately six (6) months later dated March 9, 2018, Defendant Carney admitted that "no profits have been made by AEH from its inception and has been operating strictly upon debt incurred via loans made to AEH."

66.     It is believed and therefore averred that Hammond and Defendant Toprani were recipients  of the above-described "updates" from Defendant Carney.

67.     Hammond and Defendant Toprani never took any steps whatsoever to correct their previous representations that Defendant AEH was a legitimate entity with significant business on the horizon with D4.

**Attorney Defendants' Lack of Due Diligence**

68.     In the decision to commence representation of Defendants AEH, Carney, Irey Group, Irey, and Freeze, and to continue that representation, Defendants DMC and Toprani, failed to exercise due care in recognizing and/or negligently or recklessly ignoring numerous red flags, including but not limited to:

        a.      Defendant Carney's criminal conviction;

17

b.      Defendant Freeze's FINRA Suspension;

c.      Defendant Freeze's FINRA Bar;

d.      That the Irey Group Notes, Membership Agreements and AEH Notes were "securities" which were neither registered nor exempt from registration with the SEC, the DOBS, and other state's securities agencies in which sales occurred;

e.      That the Irey Group Notes, Membership Agreements, and AEH Notes promised repayment of principal and interest to noteholders within time periods ranging from thirty (30) days to three (3) months, when in fact offering documents provided to noteholders indicated that the first AEH processing plant would not be in operation until fiscal 2018 or 2019;

f       That Defendant AEH, through at least Defendant Carney, was purportedly attempting to repay AEH investors by engaging in a fraudulent "prime bank trading platform;"

g.      That there were AEH Notes which were already in default;

h.      That there were numerous investors raising serious inquiries about the status of their investments and the operations of Defendant AEH;

i.      That there were investors represented by counsel threatening legal action against AEH for defaulting on their AEH Notes; and

j.      That Defendants Carney, Irey, and Freeze continued to solicit investors in Defendant AEH when none of the current AEH investors had received payments under their respective notes.

69.     Despite these "red flags," Defendants DMC and Toprani agreed to represent Defendants AEH, Carney, Irey Group, Irey, and Freeze, and continued that representation. During that time, the actions of Defendants DMC and Toprani, resulted in the continuation of the fraud perpetrated on AEH investors, including Plaintiff Seifert.

70.     Despite all the hallmarks of investment fraud described herein, Defendants DMC and Toprani, agreed to represent Defendants AEH, Carney, Irey Group, Irey, and Freeze, and continued that representation. During that time, the hallmark signs of fraud were growing and would have been identified and investigated by a reasonable attorney in the same or similar circumstances.

71.     Defendants DMC and Toprani knew or should have known that what Defendants were doing was unlawful.

72.     Defendants DMC and Toprani knew or should have known that their conduct in representing Defendants AEH, Carney, Irey Group, Irey and Freeze would cause injury to investors such as Plaintiff Seifert herein.

73.     Defendant Toprani knew or should have known that being identified as recipients on Defendant Carney's "updates" to investors gave the appearance that Defendants DMC and Toprani were:

a.     still legal counsel for Defendant AEH;

b.     utilizing their extensive experience with energy, corporate, business and commercial law to be the "boots on the ground" for Defendant AEH's legal needs;

c.     ensuring that Defendant AEH was complying with all applicable state and federal law including all relevant statutes, rules and regulations; and

d.      putting their stamp of approval on the representations made by Defendant Carney in the investor "updates".

74.     Had Defendants DMC and Toprani, conducted an even cursory evaluation of the background of Defendant Carney or Defendant Freeze, or a cursory inspection of the operations of Defendant AEH, they would have readily identified several hallmarks of securities fraud and would have been forced to face the reality that Defendant AEH was nothing more than a fraud being perpetrated by a convicted criminal and a permanently barred stockbroker.  A simple search online would have confirmed the truth.

75.     Instead, Defendants DMC and Toprani, facilitated Defendant AEH's growth and fiercely protected Defendant AEH when investors grew suspicious and started asking questions.

76.     Upon information and belief, Plaintiff Seifert has been the victim of a fraud, perpetrated by the intentional and/or negligent conduct of Defendants AEH, Carney, Irey Group, Irey, and Freeze, and by the negligent and/or reckless conduct of Defendants DMC and  Toprani.

77.     The fact that Defendants AEH, Carney, Irey Group, Irey, and Freeze were represented by Defendants DMC and Toprani, added an element of legitimacy to the AEH investment. The fact that Defendants DMC and Toprani participated in the activities  set forth above created a chilling effect on any efforts of Plaintiff Seifert and other AEH investors to investigate the legitimacy of the AEH program.

78.     Defendants DMC and Toprani knew or should have known that their efforts on behalf of Defendants AEH, Carney, Irey Group, Irey, and Freeze set forth above would have the effect of legitimizing the AEH program, allaying investor concerns, and deterring investors' efforts to obtain accurate information concerning the AEH investment.

79.     Each of the "red flags" set forth in paragraph 68 above constitute material facts which Defendants DMC and Toprani were required to disclose to Plaintiff Seifert but failed or refused to do so.

80.     In view of the numerous "red flags" set forth in paragraph 68 above, a reasonable attorney in the same or similar circumstances would have discovered the fraud perpetrated on Plaintiff Seifert and other AEH investors by Defendants AEH, Carney, Irey Group, Irey, and Freeze.

## CAUSES OF ACTION

### COUNT 1

### SECURITIES FRAUD
### SECTIONS 10(B) OF THE SECURITIES EXCHANGE ACT OF 1934
### (15 U.S.C. §78j(b) and SEC Rule 10b-5)

### (Defendants AEH, Carney, Irey Group, Irey, and Freeze)

81.     Plaintiff Seifert hereby incorporates the allegations of paragraphs 1 through 80 by reference, as if fully set forth below.

82.     In violation of Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder, Defendants AEH, Carney, Irey Group, Irey, and Freeze, in connection with Plaintiff's Irey Group Note, by use of the means and instrumentalities of interstate commerce and of the mails, employed one or more device, scheme or artifice to defraud the Plaintiff; by making untrue statements of material facts and omitting to state one or more material facts to the Plaintiff necessary in order to make the statements made, in the light of the circumstances in which they were made, not false and misleading, and engaged in other acts, practices or courses of business which operated to defraud and deceive the Plaintiff, all to his financial harm.

83.     In offering and selling the Irey Group Note to Plaintiff Seifert, Defendant Irey made an untrue statement of material fact, namely that Defendant AEH had a plant "up and running" overseas; when in fact upon information and belief Defendant AEH never had a plant in operation overseas or elsewhere.

84.     In offering and selling the Irey Group Note to Plaintiff Seifert, Defendants AEH, Carney, Irey Group, Irey, and Freeze omitted to state material facts necessary in order to make statements made, in light of the circumstances under which they were made, not misleading, including but not limited to the following:

   a.     Defendant Carney's criminal conviction;

   b.     Defendant Freeze's FINRA Suspension;

   c.     That Plaintiff's Irey Group Note was a "security" which was neither registered nor exempt from registration as required by the SEC and the DOBS; and

   d.     That Defendant AEH could not generate enough income to make payments to Plaintiff Seifert under Plaintiff's Irey Group Note.

85.     Plaintiff's Irey Group Note offered and sold to Plaintiff Seifert by Defendants Carney and Freeze contained material misrepresentations, including:

   a.     That Plaintiff Seifert would be repaid the principal sum of $30,000 and an additional $30,000 "from fees earned as the intermediary for financing the alternative energy project" ("earned fee") within sixty (60) days of the execution of Plaintiff's Irey Group Note; when in fact no such repayment was made and Defendants had no reasonable basis to believe such a repayment would occur; and

b.     That in the event that the AEH project "fails to fully, successfully and completely fund," Defendants Irey Group and Irey will repay the principal amount of $30,000 and the earned fee amount of $30,000 to Plaintiff Seifert on or before December 20, 2016; when in fact no such repayment was made and Defendants had no reasonable basis to believe such a repayment would occur.

86.    Defendants' misrepresentations and omissions were intended to deceive, and did in fact deceive, the Plaintiff, for the purpose of causing the Plaintiff to invest in Plaintiff's Irey Group Note.

87.    Had Defendants AEH, Carney, Irey Group, Irey, and Freeze made the statements set forth in paragraph 84 above, or not made the statements set forth in paragraphs 83 and 88 above, Plaintiff Seifert would not have agreed to invest in Plaintiff's Irey Group Note.

88.    Defendants AEH, Carney, Irey Group, Irey, and Freeze's misrepresentations and omissions to state material facts in connection with Plaintiff's Irey Group Note caused Plaintiff Seifert to suffer damages of at least the principal amount of Plaintiff's Irey Group Note plus interest.

89.    Defendants AEH, Carney, Irey Group, Irey, and Freeze are liable jointly and severally to Plaintiff Seifert for the consideration paid by the Plaintiff for the Irey Group Note, with earned fees and interest thereon.

## COUNT II

## OFFER AND SALE OF AN UNREGISTERED SECURITY IN VIOLATION OF SECTION 5 OF THE SECURITIES ACT OF 1933

### (15 U.S.C. §77e)

### (Defendants AEH, Carney, Irey Group, Irey, and Freeze)

90.     Plaintiff Seifert hereby incorporates the allegations of paragraphs 1 through 89 by reference, as if fully set forth below.

91.     Defendants AEH, Carney, Irey Group, Irey, and Freeze, by engaging in the conduct described above, directly or indirectly, made use of means or instruments of transportation or communication in interstate commerce or of the mails, to offer to sell or to sell securities, or to carry or cause such securities to be carried through the mails of in interstate commerce for the purpose of sale or for delivery after sale.

92.     No registration statement and no exemption filings have been filed with the SEC with respect to Plaintiff's Irey Group Note, and no exemption from registration was otherwise available.

93.     As a result, Defendants AEH, Carney, Irey Group, Irey, and Freeze offered and sold an unregistered security to Plaintiff Seifert without an exemption from registration in violation of Section 5 of the 1933 Act, 15 U.S.C.A. §77e.

94.     Defendants AEH, Carney, Irey Group, Irey, and Freeze are liable jointly and severally to Plaintiff Seifert for the consideration paid by the Plaintiff for Plaintiff's Irey Group Note, with earned fees and interest thereon.

**COUNT III**

**SECURITIES FRAUD**

**(Section 501 of the 1972 Act, 70 P.S. §1-501)**

**(Defendants AEH, Carney, Irey Group, Irey, and Freeze)**

95.     Plaintiff Seifert hereby incorporates the allegations of paragraphs 1 through 94 by reference, as if fully set forth below.

96.     In offering and selling the Irey Group Note to Plaintiff Seifert, Defendant Irey made an untrue statement of material fact, namely that Defendant AEH had a plant "up and running" overseas; when in fact upon information and belief Defendant AEH never had a plant in operation overseas or elsewhere.

97.     Plaintiff's Irey Group Note offered and sold to Plaintiff Seifert by Defendants Carney and Freeze contained material misrepresentations, including:

      a.     That Plaintiff Seifert would be repaid the principal sum of $30,000 and an additional $30,000 "from fees earned as the intermediary for financing the alternative energy project" ("earned fee") within sixty (60) days of the execution of Plaintiff's Irey Group Note; when in fact no such repayment was made and Defendants had no reasonable basis to believe such a repayment would occur; and

      b.     That in the event that the AEH project "fails to fully, successfully and completely fund," Defendants Irey Group and Irey will repay the principal amount of $30,000 and the earned fee amount of $30,000 to Plaintiff Seifert on or before December 20, 2016; when in fact no such repayment was made and Defendants had no reasonable basis to believe such a repayment would occur.

98.     In offering and selling the Irey Group Note to Plaintiff Seifert, Defendants AEH, Carney, Irey Group, Irey, and Freeze omitted to state material facts necessary in order to make statements made, in light of the circumstances under which they were made, not misleading, including but not limited to the following:

        a.      Defendant Carney's criminal conviction;

        b.      Defendant Freeze's FINRA Suspension;

        c.      That Plaintiff's Irey Group Note was a "security" which was neither registered nor exempt from registration as required by the SEC and the DOBS; and

        d.      That Defendant AEH could not generate enough income to make payments to Plaintiff Seifert under Plaintiff's Irey Group Note.

99.     Had Defendants AEH, Carney, Irey Group, Irey, and Freeze not made the statements set forth in paragraphs 96 and 97, or made the statements set forth in paragraph 98 above, Plaintiff Siefert would not have agreed to invest in Plaintiff's Irey Group Note.

100.    Defendants AEH, Carney, Irey Group, Irey, and Freeze's misrepresentations and omissions to state material facts in connection with Plaintiff's Irey Group Note caused Plaintiff Seifert to suffer damages of at least the principal amount of Plaintiff's Irey Group Note plus interest.

101.    Defendants AEH, Carney, Irey Group, Irey, and Freeze are liable jointly and severally to Plaintiff Seifert pursuant to Section 501 of the 1972 Act for the consideration paid by the Plaintiff for the Irey Group Note, with earned fees and interest thereon.

## COUNT IV

**OFFER AND SALE OF AN UNREGISTERED SECURITY
IN VIOLATION OF SECTION 201 OF THE PENNSYLVANIA SECURITIES ACT OF
1972
(70 P.S. §1-201)**

**(Defendants AEH, Carney, Irey Group, Irey, and Freeze)**

102.    Plaintiff  Seifert hereby incorporates the allegations of paragraphs 1 through 101 by reference, as if fully set forth below.

103.    Defendants AEH, Carney, Irey Group, Irey, and Freeze offered and sold the Irey Group Note to Plaintiff Seifert in the Commonwealth of Pennsylvania.

104.    Plaintiff's Irey Group Note is a "security" under Section 102(t) of the 1972 Act, 70 P.S. §1-102(t).

105.    No registration statement has been filed with the DOBS with respect to Plaintiff's Irey Group Note.

106.    No exemption filings have been made with the DOBS with respect to Plaintiff's  Irey Group Note, and no exemption from registration was otherwise available.

107.    As a result, Defendants AEH, Carney, Irey Group, Irey, and Freeze offered and sold an unregistered, non-exempt security to Plaintiff Seifert in violation of Section 201 of the 1972 Act, 70 P.S. §1-201;

108.    Defendants AEH, Carney, Irey Group, Irey, and Freeze are liable jointly and severally to Plaintiff Seifert pursuant to Section 501 of the 1972 Act, 70 P.S. §1-501 for the consideration paid by Plaintiff for the Irey Group Note, with earned fees and interest thereon.

## COUNT V

## BREACH OF CONTRACT/DEFAULT ON PLAINTIFF'S IREY GROUP NOTE

**(Defendants AEH, Carney, Irey Group, Irey, and Freeze)**

109.    Plaintiff Seifert hereby incorporates the allegations of paragraphs 1 through 108 by reference, as if fully set forth below.

110.    Defendants AEH, Carney, Irey Group, Irey, and Freeze have failed to make any payments under Plaintiff's Irey Group Note.

111.    Defendants AEH, Carney, Irey Group, Irey, and Freeze owe Plaintiff Seifert at least $60,000 in principal and "earned fees," plus interest.

112.    Due to such breach and default, Plaintiff Seifert has suffered damage of at least $60,000.

## COUNT VI

## NEGLIGENT MISREPRESENTATION

**(Defendants AEH, Carney, Irey Group, Irey, and Freeze)**

113.    Plaintiff Seifert hereby incorporates the allegations of paragraphs 1 through 112 by reference, as if fully set forth below.

114 .    In  offering and selling the Irey Group Note to Plaintiff Seifert, Defendant Irey provided false material information to Plaintiff Seifert to induce him to invest, namely that Defendant AEH had a plant "up and running" overseas; when in fact upon information and belief Defendant AEH never had a plant in operation overseas or elsewhere.

115.    Plaintiff's Irey Group Note offered and sold to Plaintiff Seifert by Defendants Carney and Freeze contained material misrepresentations, including:

a.    That Plaintiff Seifert would be repaid the principal sum of $30,000 and an additional $30,000 "from fees earned as the intermediary for financing the alternative energy project" ("earned fee") within sixty (60) days of the execution of Plaintiff's Irey Group Note; when in fact no such repayment was made and Defendants had no reasonable basis to believe such a repayment would occur; and

b.    That in the event that the AEH project "fails to fully, successfully and completely fund," Defendants Irey Group and Irey will repay the principal amount of $30,000 and the earned fee amount of $30,000 to Plaintiff Seifert on or before December 20, 2016; when in fact no such repayment was made and Defendants had no reasonable basis to believe such a repayment would occur.

116.    In offering and selling the Irey Group Note to Plaintiff Seifert, Defendants AEH, Carney, Irey Group, Irey, and Freeze failed to provide material information to Plaintiff Seifert to induce him to invest, including but not limited to:

a.    Defendant Carney's criminal conviction;

b.    Defendant Freeze's FINRA Suspension;

c.    That Plaintiff's Irey Group Note was a "security" which was neither registered nor exempt from registration as required by the SEC and the DOBS; and

d.    That Defendant AEH could not generate enough income to make payments to Plaintiff Seifert under the Irey Group Note.

117.    Plaintiff Seifert detrimentally and justifiably relied upon the information provided by Defendants but as an unsophisticated investor did not understand or have the requisite knowledge to know that there were material omissions. Had Defendants AEH, Carney, Irey, and Freeze made the statements set forth in paragraph 116 above, or not made the statements set forth in paragraphs 114 and 115 above, Plaintiff Seifert would not have agreed to invest in the Irey Group Note.

118.    Defendants AEH, Carney, Irey Group, Irey, and Freeze's misstatements and omissions to state material facts in connection with Plaintiff's Irey Group Note caused Plaintiff Seifert to suffer damages of at least the principal amount of Plaintiff's Irey Group Note, plus interest.

119.    Defendants AEH, Carney, Irey Group, Irey, and Freeze are liable jointly and severally to Plaintiff  Seifert for the consideration paid by the Plaintiff for the  Irey Group Note, with earned fees and interest thereon.

## COUNT VII
## BREACH OF CONTRACT/DEFAULT ON DEFENDANT IREY'S REPAYMENT
## AGREEMENT

### (Defendants Irey Group and Irey)

120.    Plaintiff Seifert hereby incorporates the allegations of paragraphs 1 through 119 by reference, as if fully set forth below.

121.    Defendants Irey Group and Irey have failed to make any payments under Defendant Irey's  Repayment Agreement.

122.    Defendants Irey Group and Ire owe Plaintiff Seifert at least $360,000.

123.    Due to such breach and default, Plaintiff Seifert has suffered damage of at least $360,000.

## COUNT VIII

## FRAUDULENT MISREPRESENTATION

### (All Defendants )

124.    Plaintiff Seifert hereby incorporates the allegations of paragraphs 1 through 123 by reference, as if fully set forth below.

125.    In  offering and selling the Irey Group Note to Plaintiff Seifert, Defendant Irey provided false material information to Plaintiff Seifert to induce him to invest, namely that Defendant AEH had a plant "up and running" overseas; when in fact upon information and belief Defendant AEH never had a plant in operation overseas or elsewhere.

126.    Plaintiff's Irey Group Note offered and sold to Plaintiff Seifert by Defendants Carney, Irey, and Freeze, and drafted, reviewed and/or approved upon information and belief by Defendant Toprani, by Defendants Carney and Freeze contained material misrepresentations, including:

> a.    That Plaintiff Seifert would be repaid the principal sum of $30,000 and an additional $30,000 "from fees earned as the intermediary for financing the alternative energy project" ("earned fee") within sixty (60) days of the execution of Plaintiff's Irey Group Note; when in fact no such repayment was made and Defendants had no reasonable basis to believe such a repayment would occur; and

> b.    That in the event that the AEH project "fails to fully, successfully and completely fund," Defendants Irey Group and Irey will repay the principal amount

of $30,000 and the earned fee amount of $30,000 to Plaintiff Seifert on or before December 20, 2016; when in fact no such repayment was made and Defendants had no reasonable basis to believe such a repayment would occur.

127.    The Irey Group Note offered and sold to Plaintiff Seifert by Defendants Carney, Irey and Freeze, and drafted, reviewed and/or approved by Defendant Toprani, failed to provide material information to Plaintiff Seifert to induce him to invest in the Irey Group Note, including but not limited to:

a.    Defendant Carney's criminal conviction;

b.    Defendant Freeze's FINRA Suspension;

c.    That Plaintiff's Irey Group Note was a "security" which was neither registered nor exempt from registration as required by the SEC and the DOBS;  and

d.    That Defendant AEH could not generate enough income to make payments to Plaintiff Seifert under Plaintiff's Irey Group Note.

128.    Plaintiff Seifert detrimentally and justifiably relied upon the information provided by Defendants, but as an unsophisticated investor did not understand or have the requisite knowledge to know that there were material omissions.  Had Defendants AEH, Carney, Irey Group, Irey, and Freeze made the statements set forth in paragraph 127 above, or not made the statements set forth in paragraphs 125 and 126 above, Plaintiff Seifert would not have agreed to invest in the Irey Group Note.

129.    Defendants' misrepresentation and omissions to state material facts in connection with Plaintiff's Irey Group Note caused Plaintiff Seifert to suffer damages of at least the principal amount of the Irey Group Note plus interest.

130.    Defendants are liable jointly and severally to Plaintiff Seifert for the consideration paid by the Plaintiff for the Irey Group Note, with earned fees and interest thereon.

## COUNT IX

## FRAUDULENT CONCEALMENT

### (All Defendants)

131.    Plaintiff Seifert hereby incorporates the allegations of paragraphs 1 through 130 by reference, as if fully set forth below.

132.    In participating in the "False Hopes and Intimidation Tactics" set forth in paragraphs 51 through 67, Defendants intentionally concealed material information concerning the illegitimacy of Defendant AEH.

133.    Defendants' deceptive conduct was intended to hide information, mislead, avoid suspicion, and/or prevent further inquiry into Defendant AEH's purported projects.

134.    Defendants knew or reasonably expected that Plaintiff Seifert and other AEH Noteholders would rely on the information and would refrain from seeking information concerning Defendant AEH's purported projects.

135.    As a foreseeable, direct, and proximate result of Defendants' actions and fraudulent concealment, Plaintiff Seifert suffered injury.

## COUNT X

## NEGLIGENT MISREPRESENTATION

### (Defendants DMC and Toprani)

136.    Plaintiff Seifert hereby incorporates the allegations of paragraphs 1 through 135 by reference, as if fully set forth below.

137.    One who, in the course of his business, profession or employment, supplies false, incomplete and inaccurate information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if the person fails to exercise reasonable care or competence in obtaining or communicating the information.

138.    Upon information and belief, Defendants DMC and Toprani represented Defendants AEH, Carney, Irey Group, Irey, and Freeze in drafting, reviewing and/or approving the Irey Group Notes.

139.    Plaintiff's Irey Group Note offered and sold to Plaintiff Seifert by Defendants Carney, Irey, and Freeze, and drafted, reviewed and/or approved upon information and belief by Defendant Toprani, by Defendants Carney and Freeze contained material misrepresentations, including:

        a.    That Plaintiff Seifert would be repaid the principal sum of $30,000 and an additional $30,000 "from fees earned as the intermediary for financing the alternative energy project" ("earned fee") within sixty (60) days of the execution of Plaintiff's Irey Group Note; when in fact no such repayment was made and Defendants had no reasonable basis to believe such a repayment would occur; and

b.      That in the event that the AEH project "fails to fully, successfully and completely fund," Defendants Irey Group and Irey will repay the principal amount of $30,000 and the earned fee amount of $30,000 to Plaintiff Seifert on or before December 20, 2016; when in fact no such repayment was made and Defendants had no reasonable basis to believe such a repayment would occur.

140.    The Plaintiff's Irey Group Note failed to disclose the following material information:

a.      Defendant Carney's criminal conviction;

b.      Defendant Freeze's FINRA Suspension;

c.      That the Irey Group Note was a "security" which was neither registered nor exempt from registration as required by the SEC and the DOBS;  and

d.      That Defendant AEH could not generate enough income to make payments to Plaintiff Seifert under Plaintiff's Irey Group Note.

141.    Defendants DMC and Toprani knew or should have known of the false statements in the Irey Group Note and the information set forth in paragraph 140 above and failed to exercise reasonable care in communicating the information to Plaintiff .

142.    Defendants DMC and Toprani knew or should have known that the Irey Group Notes were required to be registered with the SEC and the DOBS.

143.    Defendants DMC and Toprani are therefore liable jointly and severally for the damages caused to Plaintiff Seifert.

## COUNT XI

## SECURITIES FRAUD
## SECTIONS 10(B) OF THE SECURITIES EXCHANGE ACT OF 1934
## (15 U.S.C. §78j(b) and SEC Rule 10b-5)

### (Defendants DMC, DMC Bradley, Toprani, and Hammond)

144.    Plaintiff Seifert hereby incorporates the allegations of paragraphs 1 through 143 by reference, as if fully set forth below.

145.    In violation of Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder, Defendants DMC and Toprani,, in connection with the offer and sale of the AEH Note, by use of the means and instrumentalities of interstate commerce and of the mails, employed one or more devices, schemes or artifices to defraud the Plaintiff; by making untrue statements of material fact and  omitting to state one or more material facts to the Plaintiff necessary in order to make the statements made, in the light of the circumstances in which they were made, not false and misleading, and engaged in other acts, practices or courses of business which operated to defraud and deceive the Plaintiff, all to his financial harm.

146.    In drafting, reviewing and/or approving the Irey Group Note offered and sold to Plaintiff Seifert, Defendants Toprani made untrue statements of material fact, namely:

      a.    That Plaintiff Seifert would be repaid $120,000 within sixty (60) days; when in fact no such repayment was made and Defendant Toprani had no reasonable basis to believe such a repayment would occur; and

      b.    that all investment proceeds would be used for "personal expense and soft and  pre-development costs, and continuing efforts in project development of

[AEH]"; when in fact, upon information and belief, little if any of the invested funds were used as such, and Defendants Toprani and/or Hammond had no reasonable basis to believe the funds would be used as such.

147.    The Irey Group Note drafted, reviewed and/or approved, upon information and belief, by Defendant Toprani, omitted to state material facts necessary in order to make statements made, in light of the circumstances under which they were made, not misleading, including but not limited to the following:

      a.      Defendant Carney's criminal conviction;

      b.      Defendant Freeze's FINRA Suspension;

      c.      Defendant Freeze's FINRA Bar;

      d.      That the Irey Group Note was a "security" which was neither registered nor exempt from registration as required by the SEC and the DOBS;

      e.      That Defendant AEH could not generate enough income to make payments to Plaintiff Seifert under the Irey Group Note;

148.    Defendant Toprani engaged in other acts, practices, and courses of business which operated to defraud and deceive the Plaintiff, set forth in paragraphs 51 through 80 above.

149.    Had Defendant Toprani not made the statements set forth in paragraphs 169 above, made the statements set forth in paragraph 170 above, or not engage in the conduct set forth in paragraphs 51 through 80 above, Plaintiff Seifert would not have agreed to invest in the Irey Group Note.

150.    Defendant Toprani's misrepresentations, omissions to state material facts, and other conduct set forth above in connection with the offer and sale of the AEH Note caused Plaintiff Seifert to suffer damages of at least the principal amount of the Irey Group Note plus interest.

151.    Defendants DMC and Toprani are liable jointly and severally to Plaintiff Seifert for the consideration paid by the Plaintiff for the Irey Group Note, with earned fees and interest thereon.

**COUNT XII**

**SECURITIES FRAUD**

**(Section 501 of the 1972 Act, 70 P.S. §1-501)**

**(Defendants DMC and Toprani,)**

152.    Plaintiff Seifert hereby incorporates the allegations of paragraphs 1 through 151 by reference, as if fully set forth below.

153.    In drafting, reviewing and/or approving the Irey Group Note offered and sold to Plaintiff Seifert, Defendant Toprani made untrue statements of material fact, namely:

a. That Plaintiff Seifert would be repaid the principal sum of $30,000 and an additional $30,000 "from fees earned as the intermediary for financing the alternative energy project" ("earned fee") within sixty (60) days of the execution of Plaintiff's Irey Group Note; when in fact no such repayment was made and Defendants had no reasonable basis to believe such a repayment would occur; and

b.      That in the event that the AEH project "fails to fully, successfully and completely fund," Defendants Irey Group and Irey will repay the principal amount of $30,000 and the earned fee amount of $30,000 to Plaintiff Seifert on or before

December 20, 2016; when in fact no such repayment was made and Defendants had no reasonable basis to believe such a repayment would occur.

154.    In connection with the offer and sale of the Irey Group Note to Plaintiff Seifert, Defendant Toprani omitted to state material facts necessary in order to make statements made, in light of the circumstances under which they were made, not misleading, including but not limited to the following:

> a.    Defendant Carney's criminal conviction;
>
> b.    Defendant Freeze's FINRA Suspension;
>
> c.    Defendant Freeze's FINRA Bar;
>
> d.    That the AEH Note was a "security" which was neither registered nor exempt from registration as required by the SEC and the DOBS;
>
> e.    That Defendant AEH could not generate enough income to make payments to Plaintiff Seifert under the Irey Group Note;

155.    Defendant Toprani engaged in other acts, practices, and courses of business which operated to defraud and deceive the Plaintiff, set forth in paragraphs 51 through 80 above.

156.    Had Defendant Toprani not made the statements set forth in paragraph 153 above, made the statements set forth in paragraph 154 above, and not engaged in the conduct set forth in paragraphs 51 through 80 above, Plaintiff Seifert would not have agreed to invest in the Irey Group Note.

157.     Defendant Toprani's misrepresentations, omissions to state material facts, and other conduct set forth above in connection with the Irey Group Note caused Plaintiff Seifert to suffer damages of at least the principal amount of the Irey Group Note plus interest.

158.     Defendants DMC and Toprani are liable jointly and severally to Plaintiff Seifert pursuant to Section 501 of the 1972 Act, for the consideration paid by the Plaintiff for the Irey Group Note, with earned fees and interest thereon.

## COUNT XIII

## AIDING AND ABETTING CIVIL FRAUD

### (Defendants DMC and Toprani)

159.     Plaintiff Burrow hereby incorporates the allegations of paragraphs 1 through 158 by reference, as if fully set forth below.

160.     Defendants DMC and Toprani, either knew or willfully disregarded the fraud being perpetrated by Defendants AEH, Carney, and Freeze.

161.     Defendants DMC and Toprani actively and substantially assisted this fraud, by among other things: (1) Defendant Toprani's meeting with investors soliciting their investments and subsequently vouching for Defendant AEH's legitimacy; (2) drafting, reviewing, and/or approving the AEH agreements and notes, including Plaintiff's Irey Group Note; and (3) participating in the "False Hopes and Intimidation Tactics" set forth in paragraphs 51 through 67 above.

162.     As a proximate result of Defendants' conduct, Plaintiff Seifert suffered damages.

**Prayer For Relief**

WHEREFORE, Plaintiff respectfully prays that he be awarded:

A.       Judgment on Plaintiff's Irey Group Note and/or Repayment Agreement in the amounts due and owing thereon, including earned fees and interest;

B.       Actual damages to be proved at trial;

C.       Punitive damages;

D.       All costs and expenses, including without limitation reasonable attorneys' fees and expenses;

E.       Such other and further relief that the Court deems just and proper.

Dated:  November 19, 2019              /s/   Scott A. Lane

                                        Scott A. Lane
                                        Pa. I.D. 51124
                                        The Law Office of Scott A. Lane, LLC
                                        P.O. Box 368
                                        Ingomar, PA 15127
                                        (412) 780-5240
                                        scott@scottlanelaw.com


                                        /s/   Alice L. Stewart

                                        Alice L. Stewart
                                        Pa. I.D. 77649
                                        P.O. Box 7226
                                        Pittsburgh, PA 15213
                                        (412) 624-7857
                                        als234@pitt.edu

/s/    Michael A. Nagy
‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾

Michael A. Nagy
Pa. I.D. 208955
The Law Office of Michael A. Nagy, LLC
175 Shady Lane
Apollo, PA 15613
(724) 713-8228
michael@michaelanagylaw.com

Counsel for Plaintiff Ryan S. Seifert

## CERTIFICATE OF SERVICE

I, the undersigned, hereby certify that a true and correct copy of the foregoing AMENDED COMPLAINT  was filed on November 19, 2019 with the Clerk using the CM/ECF system, which will send electronic notification of such filing to the following:


Joseph L. Luvara, Esq.
Linda Varrenti Hernandez, Esq.
Dickie, McCamey & Chilcote, P.C.
Two PPG Place, Suite 400
Pittsburgh, PA 15222
jluvara@dmclaw.com
*Counsel for Defendants Dodaro, Matta & Cambest, P.C.,*
*and Steven M. Toprani*

And, that I also served the individuals listed below via First-Class U.S. Mail, postage prepaid, as follows:

Kevin T. Carney
23317 Williams Ave.
Euclid, OH 44123

Alternative Energy Holdings, LLC
c/o Kevin T. Carney
23317 Williams Ave.
Euclid, OH 44123

Alternative Energy Holdings, LLC
c/o Steven Bracken
195 Governors Lane
Zionsville, IN 46077

Robert Irey
4000 Mason Lane
Apt. 4409
Pittsburgh, PA 15205

The Irey Group, LLC
c/o Robert Irey
4000 Mason Lane
Apt. 4409
Pittsburgh, PA 15205

And, that I will serve Defendant Jonathan Freeze by the alternative means set forth in the Court's November 7, 2019 Order within the time frame set forth in the Court's October 24, 2019 Order.

.

THE LAW OFFICE OF SCOTT A. LANE, LLC

By: <u>/s/ Scott A. Lane, Esquire</u>
PA ID #51124
scott@scottlanelaw.com